IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVEN FOX,

                                       Case No. 6:16-cv-01602-MC

        Plaintiff,                                                ORDER

     v.

COLETTE PETERS, Director of the
Oregon Department of Corrections, in her
official capacity, and THE STATE OF
OREGON,

        Defendants.

---

MCSHANE, Judge:

       Plaintiff Steven Fox moves for an emergency injunction requiring the defendants Colette Peters and the state of Oregon to release him to an appropriate care facility. Fox is due to be released from the Oregon Department of Corrections (ODOC) tomorrow. Defendants intend to release Fox to a Pendleton motel with limited assistance, especially after the initial check in. Fox has little mobility and limited use of his arms and legs. Because Fox has demonstrated a significant likelihood of success on the merits of his claim, and because there is a risk he will suffer imminent harm absent an injunction, Fox's motion for an emergency temporary restraining order or preliminary injunction, ECF No. 2, is GRANTED.[1]

---

[1] Fox has yet to pay the filing fee or file a motion to proceed *in forma pauperis*. To proceed in this litigation, Fox must do one or the other.

1 –ORDER

## STANDARDS

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365, 374 (2008). The mere possibility of irreparable harm is not enough. Rather, the plaintiff must establish such harm is likely. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The standards for issuing a temporary restraining order are similar to those required for a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D. Ca. 1995). The court's decision on a motion for a preliminary injunction is not a ruling on the merits. *See Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

## DISCUSSION

Upon beginning his prison term in 2010, Fox was an able-bodied individual. Fox Decl. ¶ 2.[2] Due to the neglect of prison officials, Fox sustained injuries in July 2015. Fox Decl. ¶ 2. While the cause of Fox's injuries is likely disputed, no one disputes that Fox has severe limitations with mobility. Since July 2015, Fox has been housed in a prison infirmary or a hospital. *Id.* Fox currently resides in the infirmary of Two Rivers Correctional Institution. *Id.* Although Fox's condition is slowly improving, he cannot function alone in a motel room. Fox Decl. ¶ 4. Fox has some use in his right leg, no use in his right arm, and 10-15% use of his left arm. *Id.* Fox requires a wheelchair to move, pushing it with one thumb and one foot. *Id.* Fox can maneuver himself in the wheelchair for a few minutes, after which point his is completely

---

[2] At this stage, I accept as true most of the statements in the sworn declarations submitted in support of Fox's motion. Although Fox did not sign his original declaration, he signed a second declaration. ECF No. 7. As relevant here, especially with respect to Fox's mobility, there are few disputed facts.

2 –ORDER

exhausted. *Id.* On his own, Fox cannot wheel over even minimal barriers, such as the lip on the floor of a doorway. *Id.*

ODOC will provide Fox with a standard wheelchair upon release. Fox Decl. ¶ 10. In prison, Fox has people assisting him with moving, transfers, and other tasks such as putting on socks. Fox Decl. ¶ 6. Fox uses an assistive device to get out of bed. Without the device, it takes Fox 15 minutes to get out of bed. Fox Decl. ¶ 7. Fox occasionally falls when transferring to and from his wheelchair. Fox Decl. ¶ 17. When Fox falls, he cannot get up without assistance. *Id.* The fact that Fox is essentially helpless if he happens to fall is particularly worrisome to the court.

Fox believes he may be released to a motel that is not ADA compliant. Fox Decl. ¶ 3. Perhaps because of this motion, defendants now confirm Fox's room will be ADA compliant.[3] Fox believes he may be released without anyone to assist him in daily activities. *Id.* Fox cannot obtain, let alone prepare, food without assistance. Fox Decl. ¶ 11. While it now appears Fox will be able to open his medications without assistance, there is a risk that Fox will not be able to pick up his medications should he drop medications on the floor. Fox's doctor recommended that Fox have assistance with daily activities such as get dressed and shopping for groceries. Fox Decl. ¶ 16. This doctor, Doctor Michael Wilson evaluated Fox one week ago. This new evaluation conflicts somewhat with the report ODOC previously worked off of in forming Fox's discharge plan. That assessment summary evaluated Fox on 27 activities of daily living. Shelton Decl. ¶ 9. Based on that assessment, Fox did not qualify for assisted living services. *Id.* Dr. Wilson's opinion, combined with Fox's declaration, demonstrates Fox requires at least some continued supervision or assistance at this time.

---

[3] I recognize the somewhat unusual steps ODOC took in responding to Fox's concerns. ODOC's actions alleviated many, but not all, of the concerns of Fox and the court.

3 –ORDER

Forty years ago, the Supreme Court held that the Eighth Amendment requires state prisons to provide adequate medical care to inmates. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). This affirmative duty imposed upon states arises from the limitations imposed by the state upon the inmate's "freedom to act on his own behalf." *DeShaney v. Winnebago Cty. Dep't of Soc. Serv.*, 489 U.S. 189, 200 (1989). The duty to provide adequate medical care does not necessarily terminate once the inmate walks through the prison gate. Depending on the particular circumstances, a former inmate's inability to secure medical care "on his own behalf" may extend the state's duty to provide care beyond the period of confinement. *Wakefield v. Thompson*, 177 F.3d 1160, 1164 (9th Cir. 1999).

In *Wakefield*, a prison released an inmate without a two-week prescription of psychotropic medication because the prison was too busy to track down the medication before releasing the inmate. *Id.* at 1162. Eleven days after his release, the plaintiff suffered a relapse. The Ninth Circuit held the plaintiff stated a valid 1983 claim because the prison's actions supported a claim of deliberate indifference and because the Eight Amendment requires states "to provide outgoing prisoners being treated for a medical condition with a sufficient supply of medication to cover their transition to the outside world[.]" *Id.* at 1165.

Fox argues defendant Colette Peters, Director of the ODOC, will violate his constitutional rights by essentially dumping him alone into a motel room with little further assistance. At this point, I agree there is a grave risk of imminent harm and Fox has demonstrated a reasonable likelihood of success on his claim that, absent an injunction, defendants will violate his constitutional rights. ODOC argues Umatilla County Community Corrections (UCCC) will be responsible for Fox upon his release. UCCC will meet Fox at the motel and assist in settling Fox in. UCCC will provide a box of food from a food bank and

4 –ORDER

purchase additional items from Wallmart. Booth Decl. ¶ 4. While this is somewhat encouraging, the court is concerned about Fox's predicament after the initial settling in. There is little assurance that anyone will check in on Fox, perhaps for days or even weeks. While the parties and the court hope some state agency—whether UCCC or another agency such as DHS's Aging and People with Disabilities Unit—will monitor Fox, I am hesitant to rely on such hope here in the face of the potential for grave harm to Fox. Specifically, I am concerned that should Fox fall, he will not be able to get up. Should Fox drop his medications, he may not be able to pick them up. While a supply of protein shakes is a good step, I am also concerned that after the initial check-in, Fox may lack the ability to sustain himself.

That Fox has been housed either in a hospital or prison infirmary since July 2015 means defendants are aware that Fox requires extra assistance. Under these circumstances, placing Fox alone in a motel room without any confirmation of further check ins presents a risk of grave harm. As Fox is due to be released tomorrow, this risk is imminent. Given the above, I conclude Fox is entitled to some further assistance. As defendants cannot confirm at this point that anyone will continue to check in on Fox, I must enter this injunction requiring them to do so. While I am aware this sort of affirmative action on a prison is somewhat unusual, the circumstances here are unique. Under *Wakefield*, ODOC must provide some continued assistance when Fox is unable to provide for his own medical and basic human needs. Defendants must at least check in on Fox in some fashion. While requiring ODOC to check in on Fox could in fact save Fox's life, it will not be an enormous burden on ODOC.[4] For the next two weeks, ODOC is ordered to check in on Fox two times per day. One contact may be by a phone call to Fox's motel. One contact must be

---

[4] While this injunction will not unduly burden ODOC, I recognize it forces ODOC to take steps beyond its ordinary procedures. This, however, is no ordinary case. I encourage the parties to continue seeking creative solutions, as they have done in the past few days, to assure Fox has the assistance he requires.

5 –ORDER

an in-person check in at the motel. Pendleton is less-than 40 miles from the Two Rivers Correctional Institution. This minimal burden will alleviate the risk of grave harm to Fox should he fall or drop his medications. The minimal time period will also bridge the gap between any lack of services by UCCC or DHS.

## CONCLUSION

The court GRANTS in part Fox's motion for an emergency preliminary injunction. Through Friday, August 26, 2016, ODOC must conduct twice-daily check ins on Fox. One contact may be by phone but one contact must be in-person.

IT IS SO ORDERED.

DATED this \_\_11\_\_ day of August, 2016.

_____
Michael J. McShane
United States District Judge

6 –ORDER